```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND

IN RE:                              *

 EDITH C. EZEGBUNAM,                *    Case No. 04-34161-WIL
                                             (Chapter 7)
            Debtor                  *
*       *       *       *       *

DENI-ANTIONETTE MAZINGO,            *

            Appellant               *
                                         Adv. Proc. No.: 07-0773-WIL
        vs.                         *    CIVIL ACTION No. MJG-09-2698

MICHAEL G. WOLFF,                   *

            Appellee                *
*       *       *       *       *       *       *       *       *
```

## DECISION ON APPEAL

The Court has before it Appellant's Appeal from the Bankruptcy Court's Order of Final Judgment [Document 1] and the materials submitted relating thereto. The Court has held a hearing and has had the benefit of the arguments of counsel.

I.  INTRODUCTION

In 2002, Edith Ezegbunam ("Debtor") owned real property located at 6916 St. Anne Ave., Lanham, Maryland 20706 ("the Property"). On December 20, 2002, a deed was recorded reflecting the transfer of the Property to Debtor herself and Mr. Tochukwu Ezukanma ("T.E.") as joint tenants. Debtor has consistently contended that her signature was forged on the deed and that fraud had been committed in connection with the

transfer. Debtor and T.E. each filed suit in state court to establish their respective contentions regarding ownership of the Property.

In 2004, Debtor filed the instant Chapter 7 bankruptcy case. The bankruptcy trustee ("Trustee") removed Debtor's state court case and effected its consolidation with T.E.'s suit in the instant adversary proceeding.

### A. The First Settlement

On October 23, 2006, the Bankruptcy Court approved an agreement entered into between Debtor, T.E., and the Trustee to settle the dispute regarding ownership of the Property (the "First Settlement"). The First Settlement provided that the Property was to be transferred to T.E. upon his paying the balance due on the current mortgage, all administrative and unsecured claims of the Bankruptcy Estate, plus forty-seven percent of the equity remaining in the property after the previous costs had been deducted.

Unfortunately, T.E. was unable to obtain financing and could not comply with the First Settlement. Therefore, the ownership dispute between Trustee, Debtor, and T.E. remained unresolved.

B. <u>Unauthorized Sale of the Property</u>

Without authority from the Bankruptcy Court, and although the ownership dispute was unresolved, Debtor and T.E. sold the Property to Sullay Koroma and Rugiata Sesay ("Purchasers"). The Purchasers financed their purchase with a loan from JP Morgan Chase, NA ("Chase"). Millennium Title and Abstract Company, Inc. ("Millennium") was involved in the closing. The Chase loan was used to pay off the Property's existing mortgage and cover the costs of the sale. The remaining sale proceeds were distributed as follows:

| | |
|---|---|
| Debtor: | $21,043.76 |
| T.E.: | 11,674.12 |
| Debtor's Attorney: | 4,465.33 |
| <u>T.E.'s counsel (Appellant):</u> | <u>13,835.00</u> |
| Total: | $51,018.21 (the "Proceeds") |

On October 8, 2007, Trustee initiated the instant adversary proceeding ("the Adversary Proceeding") regarding the unauthorized sale of the Property. Trustee named Appellant, Debtor, Debtor's Attorney, T.E., Purchasers, Chase, and Millennium as defendants. As amended, the Trustee's Complaint presented five Counts:

- Count I: Revocation of the Bankruptcy Discharge (brought against the Debtor).

- Count II: Avoidance of the Post-Petition Transfer of the Proceeds (brought against Appellant, Debtor, Debtor's Attorney, T.E., and the Purchasers).

- Count III: Turnover of the Avoided Post-Petition Transfers (brought against Appellant, Debtor, Debtor's Attorney, T.E., and the Purchasers).

- Count IV: Civil Conspiracy (brought against Appellant, Debtor, T.E., Debtor's Attorney, and Millennium).

- Count V: Avoidance of the Post-Petition Lien (brought against Chase).

    C.    The Second Settlement

After the Trustee filed the Adversary Proceeding, a settlement agreement (the "Second Settlement") was entered into between Trustee and Chase, Millennium, and Debtor's Attorney. The other Defendants, including Appellant, did not settle. The Second Settlement required Chase and Millennium to pay Trustee a total of $30,000.00 as compensatory damages for expenses caused by Chase and Millennium and required Debtor's Attorney to return the $4,465.33 she had received at the closing. (App. 81.)

On August 28, 2009, the Bankruptcy Court approved the Second Settlement (the "Second Settlement Approval Order") over the objection of Appellant. Thereafter, Trustee proceeded to trial on the claims against Appellant.

On September 15, 2009, the Bankruptcy Court issued its Order of Final Judgment on Plaintiff's Complaint (the "Final

Order.") The Final Order voided the $13,835.00 payment that Appellant had received at the closing and ordered Appellant to pay compensatory damages in that amount plus applicable interest. (App. 110.)

On September 25, 2009, Appellant filed a notice of appeal "with regard to Judgment entered in this action on September 15, 2009." (App. 112.)

II. STANDARD OF REVIEW

When a District Court reviews a Bankruptcy Court final Order, the District Court acts as an appellate court. Accordingly, legal conclusions are reviewed de novo, whereas findings of fact may be set aside only if clearly erroneous. See In re Bulldog Trucking, Inc., 147 F.3d 347 (4th Cir. 1998). Matters within the Bankruptcy Court's discretion are reviewed under an abuse of discretion standard. In re Arnold, 806 F.2d 937, 938 (9th Cir. 1986). That is, the Bankruptcy Court's decisions within its discretion will be reversed only if they were "based on an erroneous conclusion of law or when the record contains no evidence on which the [Bankruptcy Court] rationally could have based [the decisions]." In re Windmill Farms, Inc., 841 F.2d 1467, 1472 (9th Cir. 1988) (citing In re Hill, 775 F.2d 1037, 1040 (9th Cir. 1985)).

III. <u>DISCUSSION</u>

    A.   <u>Jurisdiction</u>

Appellant contends, among other things, that the Bankruptcy Court erred when approving the Second Settlement. However, Appellant did not appeal from the approval of the settlement. Accordingly, Trustee contends that the Second Settlement Approval Order is an un-appealed final order, so the Court lacks jurisdiction to review any aspect of the order. Trustee's jurisdictional argument appears to turn upon the question of whether Appellant had standing to appeal from the approval of the Second Settlement. If she had standing to appeal and did not appeal, then she cannot collaterally attack the order and indirectly obtain appellate review.

A party has an appeal as of right from final orders and decrees entered by bankruptcy courts. <u>See</u> 28 U.S.C. § 158(a). The Second Settlement Approval Order is a final order with respect to the settling parties.[1] However, it is not a final order with respect to Appellant in the sense that it established her liability.

It has been held that persons who are not parties to a settlement agreement lack standing to appeal from the approval

---

[1]    <u>See</u> 1-5 Collier Bankr. Manual ¶ 5.08 (3d ed. rev.) (observing that settlement agreements have been deemed final orders).

6

of the settlement.  E.g., In re Nangle, 83 Fed. Appx. 141, 142 (8th Cir. 2003) (unpublished) ("[W]e conclude that while Nangle had standing to object in the bankruptcy court to the settlement agreement [], he lacked standing to appeal the bankruptcy court's order approving the settlement, because he could not show he has a pecuniary interest in the order"); see also In re Urban Broad. Corp., 401 F.3d 236, 243-44 (4th Cir. 2005)("[t]he test for standing to appeal a bankruptcy court's order to the district court is . . . the appellant must be a person aggrieved by the bankruptcy order [because the appellant is] 'directly and adversely affected pecuniarily'"(quoting In re Fondiller, 707 F.2d 441, 442 (9th Cir. 1983)).

However, "[a] person has a financial stake in [an] order when that order diminishes their property, increases their burdens or impairs their rights."  In Re Westwood Cmty. Two Ass'n, 293 F.3d 1332, 1335 (11th Cir. 2002)(citation omitted). In addition, it has been held that "a non-settling defendant has standing to object to a partial settlement which purports to strip it of a legal claim or cause of action, an action for indemnity or contribution for example." Waller v. Fin. Corp. of Am., 828 F.2d 579, 583 (9th Cir. 1987).

The final order from which Appellant properly appeals is the Order of Final Judgment on Plaintiff's Complaint.  However, to the extent that Appellant is contending that the Bankruptcy

7

Judge's approval of the Second Settlement stripped her of a legal claim or cause of action,[2] she may be seeking improperly to expand the Court's appellate jurisdiction. In any event, she has properly invoked the Court's appellate jurisdiction with regard to contentions based upon grounds other than the alleged improper approval of the Second Settlement.

As discussed herein, the Court concludes that even if it had jurisdiction to consider the matter, it would not reverse the Bankruptcy Judge's approval of the Second Settlement. Accordingly, the Court will assume that it has appellate jurisdiction over all of Appellant's contentions.

B. <u>Second Settlement Approval</u>

To approve a settlement, the Bankruptcy Court must engage in an independent evaluation of a proposed settlement to determine whether the settlement is "fair and equitable" and in the "best interests of the [bankruptcy] estate." <u>U.S. ex rel. Rahman v. Oncology Assocs., P.C.</u>, 269 B.R. 139, 150 (D. Md. 2001). Courts within the Fourth Circuit consider the following factors when assessing the fairness of a proposed settlement: (1) the probability of success in litigation; (2) the difficulties, if any, to be encountered in the matter of collection; (3) the complexity of the litigation involved,

---

[2] It does appear that Appellant is making such a contention.

8

including the expense, inconvenience, and delay necessarily attending the litigation; and (4) the paramount interest of the creditors and a proper deference to their reasonable views. Id. at 149. Moreover, "[a] court may approve a settlement over objections unless the proposed settlement falls below the 'lowest point in the range of reasonableness.'" Id.

Appellant has not, by any means, made a presentation adequate to establish that the Bankruptcy Judge abused her discretion when approving the Second Settlement. The Court cannot agree with Appellant's position that "[t]he transcripts of the proceedings relating to the hearing and trial are not necessary for determination of the issues raised on appeal." (Appellant Reply Br. at 3.) On the appellate record, the Court finds no adequate basis to question the Bankruptcy Judge's exercise of discretion to approve the Second Settlement.

### C. The Transfer to Appellant

Appellant asserts that the Bankruptcy Court erred on various grounds in holding her liable for the payment to her of $13,835.00 of the Proceeds. These shall be addressed in turn.

#### 1. Bankruptcy Estate Assets

Appellant contends that the funds paid to her from the proceeds were not Estate assets.

Section 549(a)[3] provides that a "trustee may avoid a transfer of property of the estate that occurs after the commencement of the case and . . . that is not authorized under this title or by the court." 11 U.S.C. § 549. Appellant contends that the bankruptcy estate consists of only one-half of the total Proceeds of $51,018.21 (that is $25,509.11) because the filing of bankruptcy converted the Property's joint tenancy to a tenancy in common. See generally In re Jimenez, No. 04-30228PM, 2006 WL 4667127, at *1 (Bankr. D. Md. Jul. 26, 2006)("The filing of the bankruptcy case under Chapter 7 severed the joint tenancy and transformed it into a tenancy in common.") Thus, Appellant argues, the $34,465.33[4] that the Trustee received from the Second Settlement would exceed the Debtor's one-half interest in the Proceeds obtained from the sale of the property.

This argument is unpersuasive. First, there has been no determination that the Property was properly converted into a joint tenancy.[5] Second, in any event, the Second Settlement

---

[3] Section references herein are to the Bankruptcy Code, 11 U.S.C., unless otherwise indicated.

[4] The $34,465.33 consists of the $30,000.00 Chase/Millennium payment for compensatory damages plus the $4,465.33 payment from the Debtor's Attorney. Appellant would also have the Court credit the default judgment entered against the Debtor. However, the record does not contain any indication that the Trustee has been successful in any actual recovery from the Debtor.

[5] Appellant has not argued on appeal that the Bankruptcy Court should have made such a determination when approving the Second Settlement.

10

payment consists of $30,000.00 paid to compensate Trustee for expenses borne by the Estate and only $4,465.33 of the Proceeds returned by Debtor's counsel. Therefore, the amount the trustee received from the Second Settlement as part of the Proceeds would not exceed the Estate's share of the Proceeds even if the Estate's share were limited to $25,509.11.

2. Authorization to Sell the Property

Appellant contends that, by virtue of the First Settlement, Debtor and T.E. were authorized to sell the Property. The First Settlement provides:

> 1. The parties agree that the entire interest in [the Property] shall be transferred solely to [T.E.] in consideration for the amounts outlined below.
>
> 2. The parties agree that [T.E.] shall pay an amount equal to the current mortgage pay-off, plus all administrative and unsecured claims of the Bankruptcy Estate, plus forty-seven percent of the equity remaining after the previous costs are deducted.
>
>      . . . .
>
> 6. If the parties violates [sic] any of the terms of this Agreement, [the Property] shall be sold and proceeds distributed first to cover all administrative and unsecured claims of the Bankruptcy Estate and the balance distributed fifty-fifty between [T.E.] and [Debtor].

(App. 104, First Settlement.)

11

It is undisputed that T.E. did not obtain the requisite financing to pay off the then-current mortgage as required by the First Settlement. Nevertheless, Appellant argues that ¶ 6 of the First Settlement authorized Debtor and T.E. to sell the Property. Thus, Appellant claims, the money the Trustee received from the Second Settlement ($34,465.33) is more than sufficient to cover the claims and administrative expenses as they existed on the date of the Property's closing.

The Court will assume arguendo that the First Settlement can be construed to mean that the Debtor and T.E. were authorized by the Bankruptcy Court to sell the Property.[6] However, the Bankruptcy Court did not authorize the distribution of the Proceeds of the sale to Debtor, T.E., and their respective counsel. Moreover, the Debtor, T.E., and their counsel failed to comply with the First Settlement and first distribute the Proceeds to the Estate to cover administrative expenses and unsecured claims. This caused the Trustee to incur additional expenses to protect the bankruptcy Estate's interest in the Property.

---

[6] It is not readily apparent from the First Settlement that the Debtor and T.E. were authorized to sell the Property, but the Trustee states that had the Proceeds been paid over to the Trustee for distribution, he would have been able to seek approval of the sale nunc pro tunc.

12

### 3. Determination of Liability

Appellant has not presented a sufficient record to establish that the Bankruptcy Court committed reversible error in deciding that Appellant was liable for $13,835.00. The Final Order indicates that the Bankruptcy Court stated its reasons "on the record" upon consideration of "the documents entered into evidence," the "testimony presented at trial," and the "arguments of counsel." (App. 109-10.) However, Appellant has not provided a record from which the Court could review the Bankruptcy Court's findings of fact and conclusions of law to determine that the Final Order was erroneous.[7]

### 4. Good Faith Transferee

Appellant contends that the Bankruptcy Court erred by concluding that the $13,835.00 avoided transfer is recoverable from Appellant because she was a good faith transferee.

Section 550 of the Bankruptcy Code provides:

> (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section . . . 549 . . . the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from--

---

[7]  The Designation of Record indicates that the Appellant originally designated the August 31, 2009 transcript for the appellate record. However, the transcript was never provided to the Court. (See District Court Docket Entry 1-30.)

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

(b) The trustee may not recover under section (a)(2) of this section from--

(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or

(2) any immediate or mediate good faith transferee of such transferee.

. . . .

(d) The trustee is entitled to only a single satisfaction under subsection (a) of this section.

11 U.S.C. § 550.

Appellant has not presented a record establishing that the Bankruptcy Court committed reversible error. It appears from the record available that she could properly have been found to be an initial transferee. It is undisputed that Appellant received the $13,835.00 in issue from the proceeds at the closing, and there is nothing indicating that she did not have legal control over the funds or that she was unable to put those funds to her own use. See In re Se. Hotel Prop. Ltd. P'ship, 99 F.3d 151, 156 (4th Cir. 1996) (observing that an initial

transferee is a person or entity that has "exercised legal dominion and control over the property"). The Trustee's power to recover from an initial transferee is "absolute." Id. at 154. Hence, there would be no viable good faith transferee defense.

In any event, Appellant has not presented a record adequate to establish that the Bankruptcy Judge would have erred in finding that she was not a good faith transferee. Indeed, Appellant knew the First Settlement required any proceeds from the sale of the Property to be applied first to administrative expenses and unsecured claims because she participated in the First Settlement negotiations (See Appellant Br. at 3), and she engaged in e-mail exchanges with the Trustee in which she inquired about the bankruptcy estate's costs and expenses. (App. 54-58.)

5. The Single Satisfaction Rule

Appellant contends that the Bankruptcy Court erred by concluding that the $13,835.00 is recoverable from her because the $34,465.33 payment the Trustee received from the Second Settlement and the default judgments entered against the Purchasers constitute a single satisfaction of the Debtor's interest in the avoided transfer. Section 550(a) provides that more than one person may be held responsible for an avoidable

15

transaction, but § 550(d) limits the trustee's right of recovery to only one satisfaction of each avoided transfer. Once again, it must be noted that the Trustee's receipts by virtue of the Second Settlement included only $4,465.33 of returned transfer funds and $30,000.00 of compensatory damages. Thus, the recovery of $13,835.00 from Appellant would not violate the single satisfaction rule.

### 6. The Purchasers' Vacated Default Judgments

The Trustee received default judgments against the Purchasers during the course of the underlying adversary proceeding because they did not respond to the Trustee's Complaint. The default judgments restored the Trustee as the owner of the Debtor's interest in the Property. (See App. 68 and 71.)

In the Second Settlement Approval Order, the Bankruptcy Court stated:

> [T]o the extent that the Court's prior Default Judgments against [the Purchasers] are required to be vacated in order to confirm that they have been conveyed "good title" to the Property, the Default Judgments previously entered against [the Purchasers] be, and hereby are VACATED."

(App. 95.)[8]

---

[8] Appellant also argues that the Second Settlement Approval Order improperly vacated the default judgments sua sponte.

Appellant contends that the Court's vacating default judgments unfairly prejudiced her ability to present the defense – asserted in her pretrial statement – that because the default judgments restored the Debtor's interest in the Property, the Trustee's attempt to collect Appellant's portion of the Proceeds violated § 550(d)'s prohibition against double recovery of an avoided transfer. However, Appellant has not presented a record establishing that the Second Settlement prevented her from seeking contribution or indemnification from the settling defendants.

Moreover, the Second Settlement Approval Order indicates that it was based on "the reasons stated on the record" after considering "the evidence, the documents, and the arguments presented by the parties." (App. 94.) Appellant has failed to

---

Appellant has not presented any authority to support her contention that a lower court is without authority to sua sponte vacate a default judgment where all necessary parties are notified, and the vacated default judgments facilitate recovery for the party for whose benefit the default judgments were entered. Cf. U.S. v. Jacobs, 298 F.2d 469, 472 (4th Cir. 1961) (observing that Rule 60(b) "need not necessarily be read as depriving the court of the power to act in the interest of justice in an unusual case in which its attention has been directed to the necessity for relief by means other than a motion"); Fort Knox Music Inc. v. Baptiste, 257 F.3d 108, 111 (2d Cir. 2001) ("While normally such relief [under Rule 60(b)] is sought by motion of a party, [] nothing forbids the court to grant such relief sua sponte."). Furthermore, the default judgments were not vacated sua sponte, but, rather, were vacated in response to the Trustee's Motion to Settle in order to structure the proposed settlement.

17

supply the Court with the relevant transcript from which to review the Bankruptcy Court's "reasons stated on the record."

### 7. The Chase/Millennium Payment

Appellant contends that the Bankruptcy Judge abused her discretion by approving the Second Settlement provision that the "$30,000.00 obtained from Millennium and Chase <u>shall not be applied as a credit to any money Judgments</u> entered against any other defendant in this adversary proceeding." (<u>See</u> App. 94)(emphasis added). Appellant asserts that the $30,000.00 Chase/Millennium payment should be applied to offset her liability.

The Second Settlement Approval Order indicates that the Bankruptcy Court's decision with respect to the Chase/Millennium payment was based on "the reasons set forth in the Motion [to Settle] <u>and</u> on the record." <u>Id.</u> Appellant did not present the hearing transcript to enable any review of the Bankruptcy Court's reasons stated on the record. In addition, the Motion to Settle does not provide a basis to reverse the Bankruptcy Court.

Appellant contends that the Bankruptcy Court abused its discretion in calling for the payment of $30,000.00 as compensatory damages for costs and fees because the Complaint did not request an award of costs and fees, and the Bankruptcy Court did not determine the $30,000.00 amount. Appellant has

18

not presented a reason to hold that parties to an adversary proceeding cannot structure their settlement as they wish and are limited by the relief sought in the complaint.

Appellant argues that because Count IV of the Complaint (conspiracy claim) sought to impose joint and several liability, somehow the Bankruptcy Court erred when approving a settlement allocating the $30,000.00 payment from Chase and Millennium to compensation for fees and costs. The Court sees no reason why the existence of Count IV would restrict the structuring of the settlement. In any event, neither Chase nor Millennium received any part of the Proceeds so as to be jointly and severally liable with the other Defendants with regard to any return of transferred funds.

The record does not establish that the Bankruptcy Judge abused her discretion by allocating Chase and Millennium's payment to expenses and costs incurred as a direct result of their actions, while permitting the Trustee to pursue recovery of all of the Proceeds from the <u>actual</u> recipients of the Proceeds. Indeed, the Second Settlement Approval Order recognizes that the $4,465.33 obtained from Debtor's Attorney is treated differently from the Chase/Millennium payment and "<u>shall</u> be applied as a credit to any money Judgments entered against any other defendant in this adversary proceeding." (App. 94)(emphasis added).

Finally, Appellant contends that the $30,000.00 payment from Chase and Millennium should be considered payment for part of the bankruptcy estate's interest in the Proceeds because it was paid in exchange for the Trustee's providing "good title" in the Property to the Purchasers. However, Appellant has not presented a record adequate to refute the conclusion that the Second Settlement was entered into because the Trustee recognized that Chase had potentially meritorious defenses relating to its lien so that a restoration of the Trustee's interest in the Property may have been of little (if any) practical value. In any event, the bottom line is clear: Appellant has not presented a record adequate to establish that the Bankruptcy Judge abused her discretion when approving the Second Settlement and/or erred in issuing the Final Order.

IV. <u>CONCLUSION</u>

For the foregoing reasons:

1. The Court shall AFFIRM the Bankruptcy Court's Order of Final Judgment.

2. Judgment shall be entered by separate Order.

SO ORDERED, on <u>Thursday, September 2, 2010.</u>

                                                _____/s/_____
                                                Marvin J. Garbis
                                    United States District Judge